**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

<u>Estate of Margaret P. Lunt</u>

    **v.**                             **Civil No. 04-CV-398-PB**

<u>Gregory A. Gaylor</u>

**<u>MEMORANDUM AND ORDER</u>**

    The Estate of Margaret P. Lunt moves for partial summary judgment on several counts in its complaint against Gregory Gaylor.  In support of its motion, the Estate argues that Gaylor is collaterally estopped from challenging these counts because of prior criminal convictions that arise from the same facts.  Gaylor objects, arguing that collateral estoppel does not apply because the Estate's claims are dissimilar in character, context, and factual basis from his convictions.  For the reasons set forth below, I grant the Estate's motion in part, and deny it in part.

**I.  <u>BACKGROUND</u>**

**A.  <u>The Moultonboro Neck Limited Partnership</u>**

    On March 5, 1987, Gaylor and Lunt formed the Moultonboro Neck Limited Partnership ("Partnership") for the purpose of

acquiring, developing, and selling real estate.  Def.'s Ex. No. B
at 1–2.  As a limited partner, Lunt's sole responsibility was to
transfer 60 acres of land to the Partnership that she owned in
the Lake Winnepesaukee area ("Lunt Property").  Id. at 4.  In
return, Lunt was to receive an annual distribution of 50 percent
of the Partnership's profits.  Id.  Gaylor made no contributions
to the Partnership but served as the Partnership's general
partner.  Id.

   In May 1987, Gaylor used the Lunt Property as security for a
$250,000 line of credit from the New Hampshire Savings Bank.
Def.'s Ans. ¶ 9.  At an unspecified later date, Gaylor increased
this initial line of credit to $765,194.53.  Def.'s Ans. ¶ 10.
On April 27, 1989, Gaylor transferred two parcels from the Lunt
Property to Chindwin Realty Trust and Dudh Kosi Realty Trust, two
organizations for which he served as the trustee.  Pl.'s Ex. 3 at
3.  On August 8, 1991, Gaylor also conveyed real property owned
by the Partnership to Tejas Timber Resources, an entity for which
he served as the registered agent.  Def.'s Ans. ¶ IC.  Gaylor
sold the majority of the remaining Lunt property to Robert and
Shirley Delong on July 18, 1991, for $1.5 million.  Def.'s Ans. ¶
11.  The proceeds from this sale were used to discharge several

-2-

writs of attachment which had been applied to the property.  Id. at ¶ 12.

Lunt claims that she never received any of the proceeds from this sale or any other return on her initial contribution to the Partnership.  Pl.'s Ex. No. 2.  She also asserts that she contributed an additional $300,000 in cash to the Partnership but was never repaid.  Id.

**B.   Gaylor's Criminal Prosecution**

Between July 18, 1987 and December 24, 1991, Gaylor made, or caused to be made, 61 transfers from the Partnership's accounts for his personal benefit.  Pl.'s Ex. No. 3-6.  Among the illicit transactions were checks written for (1) a 23-foot, 1986 model Cobalt Condesa boat, (2) a Chris Craft antique wooden boat, (3) the transportation and mooring of said boats, and (4) a 1967 Jaguar automobile.  Pl.'s Ex. No. 3 at 1-3.  In total, Gaylor misappropriated $612,347.77 of the Partnership's funds.  Pl.'s Ex. No. 3-4.

Based upon the preceding facts, a grand jury indicted Gaylor on numerous felony and misdemeanor counts of theft in December 1997.  Pl.'s Ex. No. 7 at 1.  On April 14, 1999, following a three week trial, a jury found Gaylor guilty of (1) 52 counts of

Class A theft by misapplication, (2) nine counts of Class B theft by misapplication, and (3) one count Class A theft by misapplication for misuse of a partnership credit card.  Pl.'s Ex. Nos. 3–5.  Gaylor, however, fled while the jury was deliberating.  As a result, the Merrimack Superior Court issued a warrant for his arrest.  Pl.'s Ex. No. 8 at 2.

Gaylor was sentenced *in absentia* on June 29, 1999 to 14-and-a-half to 29 years in prison.  Pl.'s Ex. Nos. 3–5.  The court also required him to pay $635,061.63 in restitution.  Id.  Gaylor was finally apprehended in Switzerland in November 1999 and, following a prolonged extradition hearing, was returned to New Hampshire in August 2000 to serve his sentence in the New Hampshire state prison.  Pl.'s Ex. No. 6 at 2.

While Gaylor was at large, his attorneys continued to represent his interests by appealing his conviction to the New Hampshire Supreme Court.  Id.  Upon his return to the state, Gaylor was informed that the Supreme Court had refused to consider his appeal.  Id.  He responded by filing a petition for writ of habeas corpus in the state court, asserting fourteen different grounds for relief.  Id.  Of the fourteen claims, all but one were dismissed by the Merrimack Superior Court on August

-4-

2, 2002.  Id.  The court ruled that the remaining claim, Gaylor's averment of ineffective assistance of counsel, required an evidentiary hearing for proper adjudication.  Id. at 3.  This hearing was conducted on January 17, 2003, and on July 28, 2003, the court denied Gaylor's habeas petition.  Id. at 3-4.

Gaylor's subsequent motion to reconsider was denied on September 24, 2003 and his appeal to the New Hampshire Supreme Court was likewise denied on December 23, 2003.  Id. at 5-6. Undeterred, Gaylor filed an amended Motion for New Trial (which included a request for further evidentiary hearings), a Motion for Sanctions, and a Motion to Expedite Hearing.  Id. at 10.  By order dated October 20, 2004, the Superior Court once again denied Gaylor's requests.  Id.  Gaylor responded by filing a new petition for habeas relief in the federal district court pursuant to 28 U.S.C. § 2254.  See 04-CV-372-PB.  That petition remains pending.

C.    **Procedural Posture of the Civil Suits**

The current case was preceded by a suit brought by Lunt against both Gaylor and Tejas Timber Resources in the Carroll County Superior Court on September 21, 1994.  Def.'s Ex. No. F. That suit, which arose out of the same operative facts and

circumstances, alleged that Gaylor had negligently managed the Partnership's assets and breached his fiduciary duty.  See Lunt v. Gaylor, 150 N.H. 96, 96 (2003).  Lunt sought monetary damages, as well as rescission of the deed transferring portions of the Lunt property into the exclusive control of Tejas Timber Resources.  Id.

Gaylor failed to appear at trial.  Id.  Consequently, in August 1995, Lunt was awarded a default judgment for the requested rescission and over $2 million in damages.  Id. Gaylor's failure to appear was later determined, however, to have resulted from defective service of process.  Id at 97.  Thus, on July 19, 2002, the Superior Court vacated the default judgment. Id.  Gaylor appealed this ruling to the New Hampshire Supreme Court claiming that the entire suit should have been dismissed as well.  In an October 1, 2003 ruling, the New Hampshire Supreme Court agreed and dismissed the action without prejudice.  Id.

Lunt died on June 10, 2000, prior to this ruling.  Aff. Russell Lunt ¶ 8.  On August 11, 2000, Arthur H. Nighswander, Esq., was appointed as executor of her estate.  Pl.'s Ans. To Interrog. No. 1.  Lunt's estate then re-filed the Complaint on September 29, 2004 in Carroll County Superior Court, and Gaylor

removed the case to federal court pursuant to 28 U.S.C. § 1441, on October 25, 2004.  (Doc. No. 3).[1]  The Estate now moves for partial summary judgment.

## II.  <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

In ruling on a motion for summary judgment, I "construe the record evidence in the light most favorable to, and [draw] all reasonable inferences in favor of, the non-moving party."  <u>ATC Realty, LLC v. Town of Kingston</u>, 303 F.3d 91, 94 (1st Cir. 2002)(citation and internal quotations omitted).  The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions [of the record] which it believes demonstrate the absence of a

---

[1]  Tejas Timber Resources has since been dismissed as a party to this case.  (Doc. No. 16).

-7-

material fact." <u>Celotex v. Catrett</u>, 477 U.S. 317, 323 (1986)
(citation and internal quotations omitted).  Once that burden is
met, the non-moving party must "produce evidence on which a
reasonable finder of fact . . . could base a verdict for it," or
else the motion will be granted.  <u>Ayala-Gerena v. Bristol Myers-
Squibb Co.</u>, 95 F.3d 86, 94 (1st Cir. 1996)(citation omitted).


### III.  <u>ANALYSIS</u>

The Estate contends that Gaylor's prior criminal convictions
for misapplication estop him from litigating his liability as to
Counts II, III and IV of the Complaint.  Gaylor objects, arguing
that collateral estoppel does not apply because the Estate's
claims are dissimilar in character, context, and factual basis
from his convictions for theft by misapplication under N.H. Rev.
Stat. Ann. § 637:10.[2]

Under New Hampshire law,[3] "a judgment in favor of the

---

[2]  Gaylor also attempts to defend against summary judgment
by reiterating the affirmative defenses stated in his answer.  I
decline to address these arguments in this Memorandum and Order.

[3]  "Because jurisdiction in this case rests on diversity and
because the case relied on by the part[y] invoking estoppel was
decided by a [New Hampshire] court, [I] apply [New Hampshire] law
on collateral estoppel" in deciding this motion.  <u>Kowalski v.
Gagne</u>, 914 F.2d 299, 302 (1st Cir. 1990) (citation omitted).

prosecuting authority [in an earlier criminal case] is preclusive in favor of a third person in a later civil action . . . against the defendant in the criminal prosecution." <u>Hopps v. Utica Mutual Insurance Co.</u>, 127 N.H. 508, 511 (1985)(following the Restatement (Second) of Judgments § 85(2)(a) (1982)).  For this general rule to be applicable, however, "the issue to which preclusion [will apply, must] have been contested and actually litigated in the prior action."  <u>Id.</u> (citation omitted) Additionally, the party against whom collateral estoppel is sought must have had a "full and fair opportunity to litigate" the issue in the prior case and a final judgment must have been rendered.  <u>See</u> <u>Aubert v. Aubert</u>, 129 N.H. 422, 427-28 (1987). Collateral estoppel bars a party from relitigating "any question of fact that was actually litigated and determined against them in a prior suit."  <u>State v. Charpentier</u>, 126 N.H. 56, 60 (1985).

There can be little doubt that Gaylor was given a "full and fair opportunity" challenge his criminal convictions.  The procedural history of that case is a testament to the due process the criminal justice system affords defendants.  By exhausting nearly every available avenue of appeal, Gaylor was given more

than five opportunities to argue his case,[4] and in each instance
the underlying jury verdict was upheld.

Furthermore, notwithstanding Gaylor's pending petition for
habeas corpus relief, he has had a full and fair opportunity to
litigate the issues presented at his criminal trial to a "final
judgment."  See Gephart v. Daigneault, 137 N.H. 166, 172
(1993)(collateral estoppel will not be applicable where there is
no final judgment).  Although the New Hampshire Supreme Court has
yet to address the effect a habeas petition has on the finality
of a criminal conviction in the context of a collateral estoppel
claim, several other courts have determined that it would be
injurious to allow defendants to use habeas corpus as a tool to
bar collateral estoppel.  See, eg., Mueller v. J.C. Penney Co.,
173 Cal. App. 3d 713, 719 (1985)(collateral estoppel properly
applied based on facts established by a criminal conviction even

_____

[4] Before being convicted, Gaylor was afforded a full trial
in which he was permitted to litigate all of the charges against
him with the assistance of counsel.  Following his conviction,
Gaylor (1) appealed to the New Hampshire Supreme Court, (2) filed
a motion to reconsider in response to the denial of his appeal,
and (3) moved to clarify and reopen after his motion to
reconsider was denied.  Pl.'s Ex. 6 at 2.  Gaylor then filed a
petition for habeas relief in Merrimack Superior Court asserting
14 bases for relief, all of which were subjected to close
scrutiny and ultimately rejected.

though defendant had a pending habeas corpus petition before

Ninth Circuit Court of Appeals).  In accord with this position,

the Restatement (Second) of Judgments explains that "the wisest

course [in such situations] is to regard the prior decision of

the issue as final for the purpose of issue preclusion without

awaiting the end judgment."  Restatement (Second) of Judgments §

13(G) (1982).[5]  Because the New Hampshire Supreme Court has cited

the Restatement favorably in deciding that a criminal conviction

could be the basis for collateral estoppel in a later civil suit,

see Hopps, 127 N.H. at 511, I conclude that it would likely do

the same in resolving this issue.

The remaining question, then, is whether Gaylor's numerous

convictions for theft by misapplication encompass, either

expressly or implicitly, legal and factual determinations which

permit the resolution of Counts II, III and IV of the Estate's

---

[5]   The drafters of the Restatement recognized that a
problem may arise "[i]f judgment is rendered in the second action
on the basis of judgment in the first, and the judgment in the
first is then nullified."  Restatement (Second) of Judgments §
16(A).  They thus explain that "[i]t has been contended that the
later judgment should then be automatically nullified," however,
under the current doctrine "the later judgment remains valid, but
a party, upon a showing that the earlier judgment has been
nullified and that relief from the later judgment is warranted,
may by appropriate proceedings secure such relief."  Id. at (C).

Complaint.  I address each of these claims in turn.

## A.    Count II

The Estate charges in Count II that Gaylor breached a fiduciary duty owed to the Partnership by wasting, depleting, and misappropriating $2.8 million in cash and assets of the Partnership's funds.  The Estate further argues that Gaylor's conviction for theft by misapplication collaterally estops him from litigating his liability as to all of Count II.

As general partner, Gaylor had a fiduciary duty[6] to "account to the partnership for any benefit, and hold as trustee for it any profits derived by him without consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property."  N.H. Rev. Stat. Ann. § 304-A:21; see also N.H. Rev. Stat Ann. § 304-B:24 (subjecting general partner to same liability as partner in a partnership without limited powers).

_____

[6]  A fiduciary relationship has been determined to "exist in cases where there has been a special confidence reposed in one who, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing the confidence."  Appeal of Concerned Corporators of Portsmouth Sav. Bank, 129 N.H. 183, 204 (1987); (citing Lash v. Cheshire County Savings Bank, Inc., 124 N.H. 435 (1984)).  Thus, as a matter of basic legal principle, Gaylor owed a fiduciary duty to the Partnership, irrespective of the findings of the jury.

To have convicted Gaylor of theft by misapplication, the jury must have decided that he had used Partnership funds as if they were his own.[7]  In fact, the indictment explicitly states that such a finding was required.[8]  As a matter of law, the theft of Partnership funds is a breach of the fiduciary duty to account for and hold Partnership assets for the benefit of the partners. Thus, Gaylor is estopped from challenging this conclusion in the civil case.

The applicability of collateral estoppel arising from the criminal convictions is limited, however, to those acts that are explicitly identified in the indictment.  Contrary to the Estate's assertions, Gaylor was not charged with any crimes in connection with his conveyance of land to the Chindwin Realty Trust, Dudh Kosi Realty Trust, or Tejas Timber Resources.  Nor

---

[7]  A person is guilty of theft by misapplication "if he obtains property from anyone or personal services from an employee upon agreement, or subject to a known legal obligation, to make a specified payment or other disposition to a third person, whether from that property or its proceeds or from his own property to be reserved in an equivalent or agreed amount, if he purposely or recklessly fails to make the required payment or disposition and deals with the property obtained or withheld as his own."  N. H. Rev. Stat. Ann. § 637:10.

[8]  The indictment states that "Gaylor recklessly failed to make the required disposition of the Partnership's funds and treated them as his own."  Pl.'s Ex. No. 3-5.

did the indictment include any allegations concerning Lunt's
claim that Gaylor had misappropriated $300,000 in cash that she
had conveyed to the Partnership.  Thus, Gaylor can not be
collaterally estopped from challenging the Estate's assertions
concerning those transactions.  Nor is Gaylor estopped from
raising any viable affirmative defenses he may have with respect
to this count.

**B.**   **Count III**

     Count III pleads, in the alternative, that Gaylor owed a
duty of care to the Partnership, which he breached by negligently
mishandling the Partnership funds.  The Estate further contends
that the jury in Gaylor's criminal case has already determined
that Gaylor was negligent with respect to his duty and therefore
that Gaylor must be estopped from litigating this issue.  I
agree.  The jury in the criminal case found that Gaylor acted
recklessly when he misappropriated Lunt's funds.  Such a finding
necessarily encompasses a finding that Gaylor acted negligently.
I thus conclude that Gaylor must be collaterally estopped from
litigating his negligence, but only as to those facts stated in
the indictment.  Again, he is not estopped from asserting any
otherwise viable affirmative defenses he may have with respect to

this count.

## C.   **Count IV**

Lastly, the Estate contends in Count IV that the facts substantiating Gaylor's criminal conviction for theft by misapplication support a civil claim for conversion.[9]  The Estate asserts that Gaylor is also estopped by his criminal conviction from challenging this claim.

Under New Hampshire law, conversion involves the "*intentional* exercise of dominion or control over a chattel which . . . seriously interferes with the right of another to control it."  Muzzy v. Rockingham County Trust Co., 113 N.H. 520, 523 (1973)(emphasis added)(citing Restatement (Second) of Torts § 222A(1)).  In contrast, the jury convicted Gaylor for "recklessly" failing to make required dispositions of the partnership's funds.  See Pl.'s Ex. No. 3-4.  Because a finding that Gaylor acted intentionally was not required to arrive at the ultimate conviction for theft by misapplication, the jury did not have occasion to consider whether Gaylor acted intentionally.

---

[9]   While the Complaint is admittedly vague as to the actual charge alleged in Count IV, the Estate sufficiently clarifies this ambiguity in its Motion for Partial Summary Judgment.  See Pl.'s Motion for Partial Summary Judgment at 6.

Gaylor's criminal conviction therefore does not estop him from challenging plaintiff's claims in this count that he acted intentionally.

## IV.   **CONCLUSION**

For the foregoing reasons, the Estate's Motion for Partial Summary Judgment (Doc. No. 25) is granted in part.  Gaylor remains free to challenge any fact that was not established by his criminal conviction.  He also remains free to assert any viable affirmative defenses he may have with respect to plaintiff's claims.

SO ORDERED.

_____
Paul Barbadoro
United States District Judge

August 4, 2005

cc: Gregory A. Gaylor, *pro se*
    David H. Bownes, Esq.